IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ilker Servenen, Yasser Eldasouky, Faisal Abedrabbo, Mahmet Yildrim, Volkan Bahce and Murat Yucel Bahce, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>EmpireCLS Worldwide Chaffered Services, David Seelinger ("Seelinger"), Edward Martinez ("Martinez"), individually, and Does 1-50, inclusive; Defendants. | Civil Action No. 10-cv-3743 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION NOTIFICATION AND *HOFFMAN-LAROCHE* NOTICE**

Michael R. DiChiara
KRAKOWER DICHIARA LLC
One Depot Square
77 Market Street, Suite 2
Park Ridge, New Jersey 07656
Attorneys for Plaintiffs

## PRELIMINARY STATEMENT[1]

When determining whether a matter shall proceed as a collective action, courts should be mindful of the broad remedial purposes of the Fair Labor Standards Act ("FLSA"). *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (citing *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335 (2d Cir. 1978)). In deciding *Braunstein*, the Second Circuit was one of the first courts to authorize judicial notice in collective actions brought under the FLSA. Ten years later, the United States Supreme Court agreed with the Second Circuit, deciding that to serve the "broad remedial purpose" of the FLSA, and further the "wisdom and necessity for early judicial intervention," district courts have the discretion to manage the notice process to give other prospective class members an opportunity to join. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-173 (1989).

Since *Hoffmann-La Roche*, federal district courts in the Third Circuit have routinely granted judicial notice in FLSA collective actions, recognizing the extremely minimal finding necessary to order court-facilitated notice under 29 U.S.C. § 216(b). These courts have consistently held that the merits of the claim are irrelevant at this stage, concluding that to prevail on such a motion, plaintiffs need only demonstrate that they are "similarly situated" to the potential plaintiffs by making a modest factual showing demonstrating that the named and potential plaintiffs together were victims of a common policy or plan that violated the law.

Because of the modest showing Plaintiffs must make, this motion for conditional class

---

[1] To assist the Court in deciding this motion, Plaintiff is submitting herewith Declarations of Ilker Servenen, Faisal Abedrabbo, Mahmet Yildrim, Volkan Bahce, Murat Yucel Bahce, and Michael DiChiara.

certification and judicial notice should be granted because Plaintiffs and the putative class: (a) are all limousine drivers ("drivers"); (b) routinely work more than forty (40) hours in a workweek; (c) are misclassified as independent contractors and not paid overtime for hours in excess of forty (40); and (d) if they were converted from independent contractors to employees, they were paid less than minimum wage and were not paid for all the overtime hours they worked. The other limousine drivers are unknown at this juncture, and these similarly situated individuals will benefit from court-authorized notice, apprising them of this lawsuit and giving them the opportunity to join while they still have claims that are not time-barred. These same individuals will be severely prejudiced if notice does not issue.

Plaintiffs have attached as Exhibit A[2] a proposed notice. Plaintiffs also request that the Court direct Defendants to provide them with the contact information of the similarly situated potential class members to facilitate notice. Specifically, Plaintiffs request that Defendants provide an updated computer-readable data file containing the names, last known mailing addresses, telephone numbers, email addresses, and the last four digits of the Social Security numbers of all current and former employees of Defendants who have worked as drivers, or similar job titles, during the past three years.

### FACTS

**A.    The Parties**

    **1.    Defendants**

"EmpireCLS Worldwide Chauffeured Services ("Empire") is recognized as a leader in ground transportation and the second largest and fastest growing Chauffeured transportation company in the country." *See* Ex. B, Defendants' Employee Handbook, at p. 4.  Empire operates

---

[2] Unless otherwise indicated, all referenced exhibits are annexed to the Declaration of Michael DiChiara, submitted herewith.

3

in all fifty states, and has offices in New Jersey and California. *See* Ex. C, deposition transcript of Edward Martinez, at 7:4-11; Ex. B at 19, 26, 28, 42.

### 2. Plaintiff and Opt-in Plaintiffs

The named Plaintiffs and opt-in Plaintiffs are either current or former drivers of Defendants. Defendants classified all Plaintiffs as independent contractors and thus did not pay them overtime for hours worked over forty, even though Plaintiffs -- and the New Jersey Department of Labor -- contend that they were always employees. *See* Declarations of the named Plaintiffs, submitted herewith. *See also* Ex. D, letter dated July 21, 2008 from Empire to NJDOL, questioning finding that the drivers were employees and not independent contractors. Even though Defendants converted some of the drivers to employees, Defendants continued to violate the FLSA by paying the drivers less then minimum wage and not paying overtime for all the hours the drivers worked as employees, as well as improperly deducting from Plaintiffs' earned gratuities and at the same time attempting to exercise a tip credit to lower the drivers hourly rate,  In addition, Defendants took improper and/or fictitious deductions from Plaintiffs' wages which also affected, among other things, Plaintiffs' hourly rate, which again impacted minimum wage and overtime pay. *See* Declarations of named Plaintiffs, submitted herewith. *See also* Ex. E, letter dated February 2, 2010 from Defendant Martinez to the entire driving force, providing that drivers will be paid less than minimum wage -- $6.00 -- for some hours.

### B. Plaintiff and the Putative Class Members Share the Same Job Duties

All drivers employed by Defendants have the same primary duty -- to transport clients – and are subject to the same policies. *See* Declarations of named Plaintiffs, submitted herewith. *See also* Ex. B and Ex. F, Defendants' Chauffeur Guide.

      **C.**      **Drivers Routinely Work Over Forty Hours a Week Without Receiving Overtime Pay**

Employees with the same or similar job title as Plaintiffs routinely worked over forty hours a week. Moreover, there can be no dispute that Defendants did not pay Plaintiffs and others similarly situated overtime premiums for hours worked in excess of forty (40) per week while they were misclassified as independent contractors. *See* Declarations of named Plaintiffs, submitted herewith. *See also* Ex. C at 4:18-20 ("Independent contractors, we don't track their times.") Nor can there be any dispute that when Plaintiffs were converted to employees, they were paid less than minimum wage and were not paid for all the hours that they worked, including hours in excess of forty (40) per week. *See* Declarations of named Plaintiffs submitted herewith and Ex. E.

## ARGUMENT

**I.**    **CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE**

Plaintiff seeks conditional certification and court-facilitated notice in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA specifically contemplates employees pursuing their claims collectively:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216 (b). The collective action procedure allows for efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. *See Hoffmann-La Roche Inc. v. Sperling.* 493 U.S. 165, 170 (1989).

An FLSA "collective action" under section 216(b) is defined by three important features. First, in order to participate in a collective action, an employee must "opt in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. *Hoffmann-La Roche*, 493 U.S. at 168. Second, the statute of limitations runs on each employee's claim until his individual opt-in form is filed with the court. *Delaney v Geisha NYC, LLC*, 261 F.R.D. 55, 58 (S.D.N.Y. 2009); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potential similarly situated employees to inform them of this opportunity to "opt in" the case. *Hoffmann-La Roche*, 493 U.S. at 173; *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979).

As these important objectives indicate, court-supervised notice is the preferred method for managing the notification process for several reasons: it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions, and it protects plaintiffs' claims from expiring under the statute of limitations. *Hoffmann-La Roche*, 493 U.S. at 171-73; *Hoffmann*, 982 F. Supp. at 260. When determining whether to grant a motion for conditional certification and judicial notice, the "courts should be mindful" of the fact that providing such notice is consistent with the remedial purpose of the FLSA. *Iglesias-Mendoza*, 239 F.R.D. at 367 (citing *Braunstein*, 600 F.2d at 336).

A.   **The FLSA's Two-Stage Certification Process.**

Like most other courts, federal district courts in the Third Circuit have adopted a two-step approach to determine whether a case should be certified as a collective action. *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 192 (3d Cir.2011). During the first stage, the court

"makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Id.* at 192–193 (citations omitted). The court does not consider the merits of the dispute at this time, and the plaintiff must only demonstrate that the potential class members' "positions are similar, not identical," to his own. *Sperling v. Hoffmann–La Roche, Inc.,* 118 F.R.D. 392, 405 (D.N.J.1988), *aff'd in part, appeal dismissed in part sub nom. Sperling v. Hoffman–La Roche Inc.,* 862 F.2d 439 (3d Cir.1988), *aff'd and remanded sub nom. Hoffmann–La Roche,* 493 U.S. 165 (1989) (citations omitted); *Shakib v. Back Bay Rest. Grp., Inc .,* No. 10–CV–4564, 2011 WL 5082106, at *2 (D.N.J. Oct. 26, 2011) ("The merits of the plaintiff's claim need not be evaluated and discovery need not be completed in order for such notice to be granted and disseminated.")

    **B.**    **The Standard for Conditional Class Certification and Court-Facilitated Notice in FLSA Collective Actions.**

To determine whether the proposed recipients of opt-in notices are similarly situated, the Third Circuit utilizes a "modest factual showing" standard. *Symczyk,* 656 F.3d at 192 (stating that the modest factual showing standard "best comports with congressional intent and with the Supreme Court's directive that a court 'ascertain[ ] the contours of [a collective] action at the outset' ") (quoting *Hoffmann–La Roche,* 493 U.S. at 172)). Thus, plaintiffs need make only a "modest factual showing" that plaintiff and potential collective action members were victims of "a common policy or plan that violated the law." *Iglesias-Mendoza*, 239 F.R.D. at 368 (concluding that the plaintiffs had "easily made the modest showing that is required of them at this preliminary stage" through their allegations of common wage and overtime practices that violate the FLSA). The modest factual showing analysis is performed using a lenient standard. *See Pereira v. Foot Locker, Inc.,* 261 F.R.D. 60, 64 (E.D.Pa.2009) (using an "extremely lenient standard"); *Ritzer v. UBS Fin. Servs., Inc.,* No. 08–CV–01235, 2008 WL 4372784, at *2 (D.N.J.

Sept. 22, 2008) (utilizing a "fairly lenient standard"); *Shakib,* 2011 WL 5082106, at *2 (stating a court's determination "typically results in conditional certification of a representative class") (citing *Herring v. Hewitt Assocs., Inc.,* No. 06–267, 2007 WL 2121693, at *2 (D.N.J. July 24, 2007).

If, at this first stage, plaintiffs carry their burden, "the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Symczyk,* 656 F.3d at 192–93. At this time, when necessary, district courts have the authority to supervise the notification process, including how much time plaintiffs are given to notify class members, how class members are to be notified, and what contact information plaintiffs are afforded. *See Hoffmann–La Roche,* 493 U.S. at 170–72 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."). In this regard, the court must "strike the appropriate balance in ensuring notification to the [potential class] while minimizing disturbance to [defendant's] business." *Hallissey v. Am. Online, Inc.,* No. 99–CIV–3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008).

**C.     Factors Not Considered by the Court when Conducting the First-Stage "Similarly Situated" Analysis.**

**1.     The "merits" of the claim are not considered.**

At this "conditional certification" stage, the Courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *Shakib*, 2011 WL 5082106, at *2; *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations that the law has been violated); *Hoffmann*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs

can exist here"). As such, any arguments relating to Defendants' misclassification of drivers as independent contractors do not defeat conditional class certification.

### 2. Any "need" for highly individualized inquiry is not considered.

Because courts do not weigh the merits of the claim, extensive discovery is not necessary at the notice stage. *Hoffmann*, 982 F. Supp. at 262 (the Court need "not wait for defendant to complete its discovery before authorizing class notice") (citing *Braunstein*, 600 F.2d at 336). In fact, notice prior to full discovery is appropriate as it may further the remedial purpose of the FLSA. *See Iglesias-Mendoza*, 239 F.R.D. at 368-69 ("[t]he court is not obliged to wait for the conclusion of discovery before it certifies a collective action and authorizes notice.") In *Iglesias-Mendoza*, the Court concluded:

> If the fruits of full discovery reveal that plaintiffs are not, in fact, "similarly situated" to defendants other employees, or that only employees who worked at the same facility or engaged in a particular job are "similarly situated," the court may later decertify the class or divide into subclasses, if appropriate.

*Id.* Moreover, at this stage, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification. *Id.* at 368. *See also Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) (concluding that the primary objective of section 216(b) is defeated if the court considers variations in plaintiffs' job duties, job locations, and hourly billing rates); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Goldman v. Radioshack Corp.*, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

## II. PLAINTIFFS EASILY MEET THE "SIMILARLY SITUATED" STANDARD

In addition to the detailed allegations in their Amended Complaint, Plaintiffs' motion is supported by their declarations, deposition testimony of one of the named Defendants, and documents produced thus far by Defendants in discovery. Federal courts have routinely authorized notice to putative class members on records similar to the one present in this case. *See, e.g.*, *Delaney*, 261 F.R.D. at 59 (six declarations and allegations in complaint); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. 2006)(allegations and two declarations); *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at *2 (S.D.N.Y Apr. 24, 2006) (three affidavits and the contents of the complaint); *Young*, 229 F.R.D. at 55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all had some job and were all classified as exempt at over 108 facilities in 21 states); *Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472, at * 4 (S.D.N.Y. Nov. 30, 2005) (three affidavits sufficient for notice to employees in nine job classifications, who worked for four different corporations); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint "more than sufficient to support provisional certification"); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 234 (N.D.N.Y. 2002) (three affidavits); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (allegations in complaint); *Zhao v. Benihana*, 2001 WL 845000, at * 2 (S.D.N.Y. July 5, 2001) (one affidavit based on plaintiff's "best knowledge").

### A. Drivers

Conditional class certification is appropriate under the facts of this case because the evidence far exceeds that which is necessary to meet the low "similarly situated" standard. First, all drivers of Defendants perform the job under the same management structure. Second, common policies -- such as the ones here at Ex. B, C, E, and F that apply to drivers throughout

the country -- and common job duties are probative evidence at this stage that Plaintiffs and other drivers are similarly situated. *See Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL 2620320, * 3 (W.D. Wash. Sep. 12, 2006; *Kalish v. High Tech. Inst., Inc.*, No. 04-1440 (JRT/JSM), 2005 WL 1073645, *3 (D. Minn. Apr. 22, 2005).

### B. Defendants Violated the FLSA

#### 1. Misclassification

Courts in this Circuit have authorized dissemination of Section 216(b) notice upon a simple showing that other employees were subject to the same violations of the FLSA. Here, drivers were improperly denied overtime as they worked more than forty hours while they were misclassified as independent contractors, and defendants improperly deducted monies from the drivers' gratuities while improperly attempted to avail themselves of a tip credit. *See* Declarations of Plaintiffs, submitted herewith. Moreover, Defendants created unlawful or fictitious deductions from Plaintiffs' wages affecting, among other things, the Plaintiffs' hourly rate. Indeed, even after the NJDOL determined that Defendants had misclassified their drivers as independent contractors, Defendants still continued to classify drivers as "independent contractors." *See* Ex. G, pay statement for opt-in Marcelo Rebolledo, driver whom Defendants classified as an independent contractor in December 2011, three years *after* the NJDOL informed Defendants that their drivers were misclassified. Moreover, Defendants did not keep track of Plaintiff's hours, as they are required to do pursuant to 29 C.F.R. § 516. *See* Ex. C at 4:18-20.

#### 2. Post-conversion

Even though Defendants converted some drivers to employees, they still violated their rights pursuant to the FLSA. As employees, drivers were paid less then minimum wage, and were not paid for all the hours they worked. *See* Declarations of Plaintiffs, submitted herewith;

Ex. E. Since 2010, the federally mandated minimum wage has been $7.25, well above the hourly wage drivers received for "other" time[3]. In addition, the drivers were not paid for time while they were "engaged to be waiting."

Plaintiffs have a compelling argument that all of their on-call time is compensable. "In general, the FLSA requires that employers pay overtime compensation to employees for hours worked in excess of forty hours per work week." *Berry v. County of Sonoma,* 30 F.3d 1174, 1180 (9th Cir.1994) (citing 29 U.S.C. § 207(a)). The Court of Appeals for the Third Circuit first addressed the question of whether an employee's on-call waiting time is compensable overtime under the FLSA in *Ingram v. County of Bucks,* 144 F.3d 265, 267 (3d Cir. 1998). The court recognized that, under Supreme Court precedent and Department of Labor ("DOL") regulations, on-call time may be compensable under the Fair Labor Standards Act under two circumstances: "if the employee is required to remain on premises, or if the employee, although not required to remain on the employer's premises, finds his time on-call away from the employer's premises is so restricted that it interferes with personal pursuits."

The pertinent DOL regulations, which are "entitled to substantial deference," *Ingram,* 144 F.3d at 268, provide:

> (c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work. For example, where a police station must be evacuated because of an electrical failure and the employees are expected to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable. The employees in this example cannot use the time for their personal pursuits.
>
> (d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with

---

[3] http://www.dol.gov/whd/state/stateMinWageHis.htm#.UHclt658a88

> the understanding that he or she is expected to return to work in the event of the emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(c), (d).

Here, Plaintiffs' time on call was severely restricted, as they could not use the time effectively for personal pursuits. *See* Declarations of Plaintiffs, submitted herewith.

### C.     Plaintiff's Case is Appropriate for Court-Facilitated Notice.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. District courts are encouraged to become involved in the notice process early, to insure "timely, accurate, and informative" notice and to help maintain control of the litigation. *Id.* at 171-72. Short of providing an applicable standard, the Court in *Hoffmann-La Roche* established that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "*appropriate cases*." *Id.* at 169-70 (emphasis added). The Court ruled that determining what is an "appropriate case" lies within the "discretion" of the district court. *Id.* This case is an appropriate case to send court-approved notice.

#### 1.     The running of the statute of limitations

Here, prompt court action is needed because claims of the potential opt-in plaintiffs are being extinguished or compromised because of the statute of limitations on their claims. *See Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998); *Hoffmann*, 982 F. Supp. at 260. Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *Id.*  Thus, the statute of limitations continues to run on each individual's claim until they file a consent form with the

13

Court. *Id.* The consequence of this fundamental difference is self-evident -- each day that passes is a day of damages each potential opt-in plaintiff will be unable to recover. Court-facilitated notice will prevent the continued attrition of these claims. *See Schwed*, 159 F.R.D. at 375.

### 2. Promotion of judicial economies

Judicial notice providing pharmaceutical representatives with an opportunity to pursue their claims in one forum will create the significant judicial economies recognized in *Hoffmann-La Roche.* Indeed, because identical issues of law and fact exist amongst all of Defendants' pharmaceutical representatives in one action benefits the judicial system by resolving this case collectively at least through the discovery phase. *See Hoffmann-La Roche*, 493 U.S. at 170. Such collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring the Plaintiff and opt-ins to file separate cases in multiple federal district courts would not be an economic use of resources under the circumstances.

### 3. Equitable Tolling Is Appropriate Here

Under the FLSA, the statute of limitations for each individual party plaintiff is not tolled until he or she files written consent to join the action, or until the court issues an equitable tolling order. §29 U.S.C. § 256(b); *Partlow v. Jewish Orphans' Home of Southern Cal, Inc.,* 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche,* 495 U.S. 165; *Owens v. Bethlehem Mines Corp.,* 630 F. Supp. 309, 312-13 (S.D. W. Va. 1986). The equitable tolling doctrine applies in three principal situations in this circuit. *See Miller v. Beneficial Mgmt. Corp.,* 977 F.2d 834, 845 (3d Cir.1992). Specifically, tolling is appropriate if: (1) the defendant has actively misled the plaintiff; (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights; or (3) the plaintiff has timely asserted his rights mistakenly in the

wrong forum. *See id.* (internal quotations omitted). Moreover, equitable tolling is appropriate under the FLSA where similarly-situated plaintiffs, through no fault of their own, have been unable to join the lawsuit. *Baldozier v. Am. Family Mut. Ins. Co.,* 375 F. Supp. 2d 1089, 1093 (D. Colo. 2005) (granting tolling to the date of the filing of the original complaint where the defendant had refused "to provide contact information for former employees"); *Partlow,* 645 F.2d at 760 (granting equitable tolling where original consents found invalid based on improper attorney solicitation of the plaintiffs); *Owens,* 630 F. Supp. at 312-13 (equitable tolling where the court did not rule on plaintiff's motion for collective action certification for over a year, during which time other plaintiffs were effectively precluded from filing Consents to Join).

Here, Plaintiffs wrote to the Court on November 10, 2010, requesting permission to file a motion for conditional class certification. *See* Docket Entry No. 20. Plaintiffs also submitted a reply letter concerning the motion on November 17, 2010. *See* Docket Entry No. 22. Plaintiffs did not receive a response concerning their request. Subsequent to the aforementioned letters, the Court scheduled two mediations to possibly resolve this action. Between the date of Plaintiffs' letters concerning the motion for conditional class certification and mediation, Plaintiffs responded to two separate motions to dismiss by Defendants, which were filed on October 22, 2010 and December 5, 2011, respectively. The first mediation occurred on May 2, 2012, and it was determined that further discovery was necessary to have meaningful settlement discussions. A second mediation was scheduled for August 30, 2012, but the Court converted it to a telephone conference after receiving the parties' respective mediation statements.

Moreover, Defendants have categorically misclassified drivers as independent contractors and ineligible for overtime payments. This practice would have the expected and foreseeable effect of misleading potential class members as to facts and legal standards that might have made

15

drivers question their non-receipt of overtime wages and investigate their rights by concealing that it is their *employer* who has decided to treat them as independent contractors. Finally, the complaint has obviously put Defendants on notice not only of Plaintiffs' claims but also the claims of all potential class members.

Under these circumstances, the equities weigh in favor of equitably tolling the claims of the FLSA collective class members.

### D. Plaintiff's Notice Is Accurate and Informative.

Attached as Exhibit A is Plaintiff's proposed judicial notice. As required, it is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

### III. PRODUCTION OF A LIST OF DRIVERS IS NECESSARY TO FACILIATE NOTICE

As discussed above, all drivers employed by Defendants within three years of the date of the initial complaint are "similarly situated" employees for purposes of the FLSA. Thus, their identification to Plaintiffs is necessary to provide them with notice of the action as contemplated by the law. *See Hoffmann-La Roche, Inc.*, 493 U.S. at 170. Plaintiffs request that in addition to entering an order granting conditional certification and approving Plaintiffs' notice, Defendants be ordered to produce to Plaintiff the following within ten (10) days of its Order:

> A list, in electronic and importable format, of all persons employed by Defendant as drivers from the present to three years prior to the date of the filing of the initial complaint, including their name, address, telephone number, dates of employment as a pharmaceutical representative or similar job title, location of employment, date of birth, and last four digits of their Social Security number.

## CONCLUSION

At this preliminary stage, Plaintiff has come forward with the factual basis from which this Court can determine that similarly situated plaintiffs exist. Plaintiff respectfully requests that this Court follow the well established precedent from the United States Supreme Court, the Third Circuit Court of Appeals, the New Jersey Federal District Courts, and 1) promptly authorize this case to proceed as a collective action; 2) order the identification of all drivers who worked for Defendants during the applicable statutory period; and 3) authorize the issuance of Plaintiff's proposed notice to be mailed to all potential opt-in plaintiffs employed by Defendants from the present to three years prior to the filing of the complaint.

Dated: October 12, 2012

s/ Michael R. DiChiara
Michael R. DiChiara
KRAKOWER DICHIARA LLC
One Depot Square
77 Market Street, Suite 2
Park Ridge, New Jersey 07656
Attorneys for Plaintiffs