IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ilker Servenen, Yasser Eldasouky, Faisal Abedrabbo, Mahmet Yildrim, Volkan Bahce and Murat Yucel Bahce, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> EmpireCLS Worldwide Chaffered Services,  David Seelinger ("Seelinger"), Edward Martinez ("Martinez"), Bruce Cohen ("Cohen") and Annette Gulifield ("Gulifield"), individually, and Does 1-50, inclusive; <br><br> Defendants. | Civil Action No. 10-cv-3743 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPROT OF MOTION FOR APPROVAL OF SETTLEMENT, INCENTIVE AWARDS, AND ATTORNEY FEES**

Michael DiChiara
KRAKOWER DICHIARA LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
(201) 746-0303
Attorneys for Plaintiffs

## I.      INTRODUCTION

The named and opt-in Plaintiffs submit this motion requesting approval of a proposed settlement in this FLSA collective and New Jersey class action brought on behalf of limousine drivers for the Defendants.  The settlement will resolve all claims before this Court pursuant to the proposed compromise set forth in the Settlement and Release Agreement ("Settlement") (DiChiara Decl., Ex. 1).  This action is being resolved between all Plaintiff and Defendants on an individual basis -- meaning each Plaintiff has or will execute a settlement agreement specific to each Plaintiff's claims.  Plaintiffs submit this motion because this case was pled as both a collective and class action and settlements of FLSA cases require Court approval.

## II.      BACKGROUND

### A.      THE LAWSUIT

On July 26, 2010, the six named Plaintiffs -- Ilker Servenen, Yasser Eldasouky, Faisal Abedrabbo, Mahmet Yildrim, Volkan Bahce and Murat Yucel Bahce --filed this lawsuit on behalf of himself and other similarly situated individuals who were limousine drivers for Defendants. The named Plaintiffs claimed that the Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a, and the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.4 by failing to pay drivers overtime wages when they worked in excess of 40 hours per week, failing to pay minimum wage for all hours

worked, and taking illegal pay deductions. *See* Docket at 1[1]. On October 22, 2010, Defendants moved to dismiss the named-Plaintiffs fourth and fifth causes of action. *Id* at 12. On December 22, 2010, the Court issued an order and opinion denying in part and granting in part Defendants' motion. *Id.* at 29-30.

On January 17, 2011, the named Plaintiffs filed an amended complaint. *Id* at 33. Defendants filed an answer to the amended complaint on February 7, 2011. *Id.* at 34. On December 5, 2011, Defendants filed another motion to dismiss the named Plaintiffs' fourth cause of action -- the New Jersey Wage Payment Law Claim for unlawful deductions. On March 21, 2012, the Court granted Defendants' motion. *Id.* at 74. On August 22, 2012, the named Plaintiffs filed an action in New Jersey state court asserting claims for unlawful deductions. *See Serveren et al. v. Empire CLS et al.*, Bergen County Law Division, Index No. L-6530-12. The parties were scheduled to have a settlement conference with Judge Hammer on August 30, 2012, but because of the parties' respective settlement positions, it was converted to a telephone conference. Docket at 101. On October 12, 2012, Plaintiffs filed a motion for Conditional Class Certification. *Id.* at 108. The motion for conditional class certification was never fully briefed as the parties pursued settlement through mediation. *Id.* at 125.

**B.      DISCOVERY, MEDIATION AND PROPOSED SETTLEMENT**

Over a period of three years, the Parties and their counsel vigorously investigated the claims against Defendants. Defendants' Counsel interviewed corporate representatives and reviewed and produced extensive documents and information. Plaintiffs' counsel reviewed and produced documents and information obtained from Plaintiffs and other class members and interviewed Plaintiffs about their work

---

[1] Citations to the docket refer to the document entry number.

experiences.  The parties also each conducted two Rule 31 depositions.  Based upon the information and documents exchanged, counsel for Plaintiffs created detailed damage calculations.  *See* Ex. 2 to DiChiara Decl.

On January 24, 2013, the Parties and their counsel engaged in mediation before Dina Jansenson, Esq, an experienced, private mediator with JAMS.  Plaintiffs Faisal Abedrabbo and Ilker Serveren attended the mediation and provided additional valuable information regarding their work experiences, hours of employment, and Defendants' compensation practices.  *See* DiChiara Decl. at ¶ 14.  Defendants also attended the mediation, including individually named Defendant David Seelinger – the chairman and CEO of Empire CLS.  During the mediation, the Parties vigorously debated the claims and potential damages of all of the Plaintiffs, as well as the financial circumstances of Defendants.  In this regard, on April 5, 2013, Defendants provided Plaintiffs with detailed financial information concerning their ability to pay any judgment against them.  After discussing the financial documents that were produced, the parties had a settlement conference with this Court on July 18, 2013.  *See* Docket at 134.  On August 26, 2013, the parties confirmed with the Court that they had reached a settlement agreement.

## C.    SETTLEMENT TERMS

The Settlement provides that Defendants shall pay a total Gross Fund Value ("GFV") of Seven Hundred Thousand dollars and no cents ($700,000.00), to be paid out over a period of three years.  The settlement will be paid out over this period of itme because Defendants have represented this is the only way to afford this settlement.  After the payment of attorneys' fees and costs and incentive awards to the individually named Plaintiffs Class Representative from the GFV, the Net Settlement Amount ("NSA") shall

be distributed among Plaintiffs on a *pro-rata* basis determined by the dates Plaintiffs worked for Defendants and the date they joined this action.

Although there are no records of the specific hours worked by Plaintiffs, Defendants' corporate records reflect detailed reports of driver assignments on a daily basis as well as deductions that were made from their pay. The parties agree that Defendant's corporate records provide a reasonable basis for determining the proportion of the NSA to which each Plaintiff is entitled.

The Settlement has been structured to recognize the variations in the statute of limitations for the alleged claims. The statute of limitations for the FLSA minimum wage and overtime claims is two years (from the filing of an individual's opt-in form). The statute of limitations for the NJWPL pay deductions claim is six years (from the filing of the complaint); accordingly, the NJWPL claim period is considered to extend back to July 26, 2004. As such, the Settlement is structured to reflect that Plaintiffs have a pay deduction claim -- but no overtime or minimum wage claim -- for work performed prior to July 26, 2008. Damages for Plaintiffs fall into three separate categories: 1) deductions from pay; 2) overtime when they were classified as independent contractors, and 3) overtime after they were converted to employees.

Each Plaintiff is ascribed a certain number of weeks in each of the pertinent liability period, based on their dates of employment with Defendants. Each Plaintiff's *pro rata* share is then determined by multiplying the number of weeks in each liability period by the weekly value assigned to each liability period. This is a "fair and reasonable" manner in which to allocate the fund to the Plaintiffs. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326, 328 (3d Cir. 2011)

**D.     RELEASE OF CLAIMS**

In return for the above consideration, Plaintiffs will release federal and state wage and hour claims which were – or could have been – alleged in this action, arising at any time between July 26, 2004 and the date the Settlement is approved.

**E.     ATTORNEYS' FEES AND INCENTIVE AWARD**

As set forth in the Settlement, Plaintiffs' counsel is seeking an award of twenty (20) percent of the GFV as attorneys' fees and $2,550.00 for the reimbursement of their costs incurred.  In addition, the named Plaintiffs seek the following incentive awards for the named Plaintiffs: 1) $15,000.00 for Faisal Abedrabbo, who also alleged a retaliation claim in the complaint; 2)  $7,370.00 for Ilker Serveren; and 3) $6,950.00 for the other four named Plaintiffs.  These enhancements are based upon their time, efforts and risks incurred in prosecuting the case on behalf of Plaintiffs.[2]

**F.     FACTORS CONSIDERED IN THE SETTLEMENT OF THE CLAIMS**

The Plaintiffs and their counsel weighed the strengths, weaknesses, and complexities in their case -- including Defendants ability to pay any judgment against them -- against the benefit of receiving a significant percentage of the damages sought without the risks of litigation.

Throughout the litigation, Defendants denied all liability or wrongdoing with respect to Plaintiffs' claims.  Defendant vigorously asserted that all drivers were properly classified as independent contractors and thus were not entitled to overtime, minimum

---

[2]     *See Sullivan,* 667 F.3d at 333, n.65 ("Incentive awards are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.)

wage, or the recovery of pay deductions. The Parties also disputed the amount of hours worked by Plaintiffs.

Plaintiffs' counsel thoroughly analyzed Defendants' factual and legal defenses, examined documents and other information produced by the Parties, reviewed documents concerning Defendants' ability to pay any judgment, reviewed the defenses and documents with the Plaintiffs, and assessed the strength of Defendants' arguments. Additionally, in considering the possibility of settlement, Plaintiff and Class Counsel accounted for the time, delay, and costs of discovery and substantive motion practice, liability trial(s), damages trial(s), and appeal(s).

The settlement fund represents a substantial portion of Plaintiffs' 'best possible day.' Based upon counsel's calculations, each Plaintiff will receive, on average, more than $ 8,454.54, _after_ attorneys' fees. Plaintiffs who worked a substantial amount of time will receive significantly more than the average, and many Plaintiffs will receive several thousand dollars.

Having considered all of these factors, as well as the time, delay, and costs of further discovery, substantive motion practice, trial(s), and appeal(s), Counsel is confident that the Settlement is a favorable result for Plaintiffs and is in their best interest.

## III.   ARGUMENT

### A.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED

The "decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court, and . . . there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Id.* at 535 (internal quotation omitted). *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (There is a "strong judicial policy in favor of class action settlement[s]"

because they "promote the amicable resolution of disputes[,] lighten the increasing load of litigation faced by federal courts [and permit the parties to] avoid[ ] the costs and risks of a lengthy and complex trial.")

**1.     The Settlement Is Entitled To An "Initial Presumption of Fairness."**

The Third Circuit has directed that district courts should "apply an initial presumption of fairness when reviewing a proposed settlement where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Warfarin*, 391 F.3d at 535 (internal quotation omitted). *See also Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *34 (same). The proposed ettlement in this case is entitled to an initial presumption of fairness.

The Settlement was negotiated by counsel with significant experience in wage and hour litigation and is the product of intensive and arms' length negotiations undertaken after an in-depth factual investigation and legal analysis.  Defendants have asserted (and continue to assert) numerous defenses, and have expressly denied any wrongdoing or legal liability arising out of the conduct alleged in this action. Nevertheless, following years of discovery and investigation and lengthy settlement discussions -- which included a mediation conducted by an experienced, independent mediator -- spanning over several months, the Parties agreed to settle this action to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.  Accordingly, there should be an initial presumption that the Settlement is fair. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *30 (internal quotation omitted).

2.      **Pursuant To The *Girsh* Factors The Settlement Should Be Approved As Fair, Reasonable, and Adequate.**

In determining whether a proposed class action settlement is fair, reasonable and adequate, courts in this Circuit consider nine well-established factors:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Warfarin*, 391 F.3d at 534-535 (citing, *Girsh v. Jepson*, 521 F.2d 153, 156-157 (3d Cir. 1975).[3]  The *Girsh* factors support the final approval of this class action settlement.

a.      **The Complexity, Expense And Likely Duration Of The Litigation.**

"The first *Girsh* factor 'captures the probable costs, in both time and money, of continued litigation.'"  *Sullivan*, 667 F.3d at 320 (quoting, *Warfarin*, 391 F.3d at 536). This case has already seen several motions filed, and should the case continue, significant motion practice is anticipated.   The parties fully briefed, and the Court ruled on Defendants' two motions to dismiss.   In October 2012, Plaintiffs filed a motion for

---

[3]   The nine *Girsh* factors are not exhaustive, and courts may "consider other potentially relevant and appropriate factors."  *Sullivan v. DB Invs., Inc.*, No. 04-2819 (SRC), 2008 U.S. Dist. LEXIS 81146, at *45-46 (D.N.J. May 22, 2008), *aff'd by* 667 F.3d 273 (3d Cir. 2011) (citing, *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ("Prudential II").   Here, all relevant considerations are addressed through the analysis of the *Girsh* factors.  *See Sullivan*, 2008 U.S. Dist. LEXIS 81146, at *46, n.2 (recognizing that all relevant factors can be considered by way of the *Girsh* factors.)

conditional class certification.  While Plaintiffs agreed to withdraw stay this motion while the parties discussed settlement, Plaintiffs will renew this motion should the case not settle.   Further, if the Settlement is not approved, Plaintiffs will move for class certification, and the Parties will presumably move for summary judgment.  In addition, while the parties have engaged in substantial discovery for purposes of settlement discussions, significant additional discovery -- including numerous depositions -- would be necessary if the case is not resolved at this time.

If the case continues, there will be significant delay in Plaintiffs' recovery as well as substantial costs which will deplete any recovery, including: numerous depositions and other discovery, motion practice, trial, and possible appeals.   As settlement provides "substantial and immediate relief to the class without further expense" and avoids the delay and financial costs of litigation, this factor favors the settlement.  *Sullivan*, 667 F.3d at 321.  *See, e.g. O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at \*39-40 (D.N.J. Aug. 8, 2012); *In re Schering-Plough Corp*., No. 08-1432 (DMC)(JAD), 2012 U.S. Dist. LEXIS 75213, at \*11-12 (D.N.J. May 31, 2012). Moreover, Defendants' precarious financial situation and likely inability to pay a judgment -- as they have represented to this Court -- mitigates in favor of approving the settlement.   Moreover, Defendants' financial circumstances are the reason the total settlement will be paid out over a three-year period.

       c.       **The Stage Of The Proceedings And The Amount Of Discovery Completed.**

"The third *Girsh* factor 'captures the degree of case development that class counsel had accomplished prior to settlement,' and allows the court to 'determine whether counsel had an adequate appreciation of the merits of the case before

10

negotiating.'" *Sullivan*, 667 F.3d at 321 (quoting, *Warfarin*, 391 F.3d at 537).   Parties need not have litigated a case for years or even engaged in formal discovery, so long as counsel has reviewed sufficient information to evaluate the merits and risks of the case. *O'Brien*, 2012 U.S. Dist. LEXIS 113809, at *51-52.

The parties entered into the proposed Settlement with a thorough understanding of their case.   As set forth above, Plaintiffs reviewed thousands of pages of corporate documents and had extensive discussions with the Plaintiffs and other class members concerning the claims.   Consequently, Plaintiffs' counsel was able to properly evaluate the strengths and weaknesses of the claims and defenses and obtain an excellent result for Plaintiffs.

**d.      The Risks Of Establishing Liability And Damages.**

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement."   *Warfarin*, 391 F.3d at 537. "To properly weigh these considerations, the Court should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case."   *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *38 (citing cases).

"Plaintiffs face the initial hurdle of proving Defendants' liability under both FLSA and state wage and hours laws."   *Chemi*, 2009 U.S. Dist. LEXIS 44860, at 12. While Plaintiffs remain confident in the merits of their claims, there are considerable risks. *Cf. Schering-Plough*, 2012 U.S. Dist. LEXIS 75213, at *14 ("[a] trial on the merits always entails considerable risk").   Defendants contend that the Plaintiffs were properly

classified as independent contractors and not covered by the FLSA or New Jersey wage laws, and, when Defendants converted the drivers to employees, they were paid properly for all hours worked.  There have been mixed results concerning liability and damages in other cases involving limousine drivers and claims for overtime and unlawful deductions. *Cf. Ellis v. Common Wealth Worldwide*, 2012 WL 1004848, No. 10-cv-1741 (E.D.N.Y. Mar. 23, 2012) *and Powell v. Carey International, Inc.*, 514 F. Supp. 2d 1302 (S.D. Fl. 2007).

Further, Plaintiffs may have difficulty establishing the full extent of class-wide damages at trial.  There are no records of the actual hours worked by Plaintiffs, accordingly, overtime and minimum wages would have to be established through testimony.  Therefore, the value of the claims could be significantly impacted by the jury's assessment of the Plaintiffs' credibility.  *See Chemi*, 2009 U.S. Dist. LEXIS 44860, at 12.

The proposed Settlement is therefore preferable to a protracted litigation with uncertain results.

### e.   The Risks Of Maintaining The Class Action Through The Trial.

"Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537.  (internal quotation and citation omitted).  "Class certification is tenuous, as a district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable."  *Sullivan*, 667 F.3d at 322 (internal quotation omitted).  This action was not certified as a conditional

class or a Rule 23 class prior to the proposed settlement, and Defendants will oppose class certification if the case continues.   As there is a real possibility that class certification either will not be granted or that the class will be later decertified, this factor supports approval of the Settlement.  *See, e.g. Chemi*, 2009 U.S. Dist. LEXIS 44860, at *13-14; *In re Ravisent Techs., Inc. Sec. Litig.,* No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *31 (E.D. Pa. Apr. 18, 2005).

>           **f.**     **The Ability Of The Defendant To Withstand A Greater Judgment.**

Next, courts consider the defendant's ability to withstand judgment greater than the settlement.   Here, Defendants have represented to Plaintiffs and this Court, on numerous occasions, that if Plaintiffs were to ultimately prevail on the merits, Defendants would have to declare bankruptcy.   This representation by Defendants is ample reason for the Court to approve this settlement.

>           **g.**     **The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation.**

The final two factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case."  *Warfarin*, 391 F.3d at 538.  "The reasonableness of a proposed settlement is assessed by comparing the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *Sullivan*, 667 F.3d at 323-324 (internal quotation omitted).  "[I]n conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in

exchange for certainty and resolution." *Id.* at 324. *See, e.g. Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *48 (approving wage and hour class settlement in which, after attorneys' fees and costs, class members received 10% of their best possible day because the "settlement fund represent[ed] a good value for a case where numerous critical legal issues have not been determined and are therefore uncertain.")

While the Settlement results in a substantial recovery for Plaintiffs, they acknowledge that if they are fully successful at trial they might recover an amount larger than the sum achieved in the Settlement. For example, Plaintiffs seek liquidated damages on the FLSA claims. However, "winning on any claim is far from certain and hitting a grand slam would be unlikely." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *44 (approving overtime class settlement in which liquidated damages were not recovered). *See also Sullivan*, 667 F.3d at 325 (it was reasonable for the court to compare the value of a class settlement with actual (single) damages, rather than including potential liquidated damages).

These factors weigh in favor of approval of the settlement. As discussed above, Plaintiffs face substantial risks in collecting the best possible recovery. Moreover, the Agreement provides the significant benefit of a substantial recovery for Plaintiffs, rather than a "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

Under the totality of the circumstances, the *Girsh* factors strongly favor the Agreement. Although it is possible that Plaintiffs might recover more than the settlement amount at trial, there are significant risks, not the least of which is the real possibility of

Defendants filing for bankruptcy.  The Settlement commits a substantial amount of money to compensate Plaintiffs for their damages.  When this monetary relief is weighed against the potential obstacles and costs of further litigation, the benefits of settlement are overwhelming.

**B.      THE NAMED PLAINTIFFS SHOULD RECEIVE INCENTIVE AWARDS**

"Incentive awards are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333, n.65 (3d Cir. 2011) (internal quotation omitted).  *See also Moore v. Comcast Corp.*, No. 08-773, 2011 U.S. Dist. LEXIS 6929, at *16 (E.D. Pa. Jan. 24, 2011) (An incentive "award is particularly appropriate when the named plaintiff has actively assisted class counsel in the litigation on behalf of the class."); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.") (quotation omitted). "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333, n.65 (internal quotation omitted).  Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  *See also Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905 (MF),

09-1248 (MF), 09-4587 (MF), 2011 U.S. Dist. LEXIS 38663, at *66 (D.N.J. Apr. 8, 2011) ("By bringing suit against a major company in the travel business, [the class representatives] risk their good will and job security in the industry for the benefit of the class as a whole.")

The named Plaintiffs were instrumental to the initiation and investigation of the case. They reviewed documents, explained the relevant and necessary factual information to Counsel, evaluated Defendants' assertions, and contacted witnesses. They regularly discussed the case with Counsel and spent significant time explaining the manner in which drivers were compensated, the amount of hours they worked, and their working conditions. They also attended several court conferences. Two of the named Plaintiffs, Faisal Abedrabbo and Ilker Serveren, attended the mediation and gave a deposition. *See* DiChiara Decl. at ¶ 14.

Based upon the time and effort expended by Plaintiffs in assisting in the prosecution and resolution of the class action and the risks in bringing the action, the six named Plaintiffs request incentive awards that total $50,170.50. The requested incentive awards represents only 7.2% of the Settlement fund and is well within the range of such awards in this Circuit. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *68 (awarding each plaintiff in overtime class action $10,000 in incentive awards, totaling $80,000); *Dewey v. Volkswagen of Am.*, Nos. 07-2249, 07-2361, 2012 U.S. Dist. LEXIS 177844, at *59 (D.N.J. Dec. 14, 2012) (nine plaintiffs each awarded $10,000 incentive fee, totaling $90,000); *Moore*, 2011 U.S. Dist. LEXIS 6929, at *16 ($10,000 incentive award); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 U.S. Dist. LEXIS 60790, at *37 (E.D. Pa. July 16, 2009) (awarding each plaintiff in

overtime class action $20,000 in incentive awards, totaling $60,000); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184 (GEB), 2007 U.S. Dist. LEXIS 40729, at *68-69 (D.N.J. June 5, 2007), *aff'd by*, 579 F.3d 241 (3d Cir. 2009) (fifteen plaintiffs each awarded $10,000 incentive fee, totaling $150,000).

## C.   CLASS COUNSEL'S REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE AWARDED.

Pursuant to the Settlement Agreement, Counsel seeks an award of 20% of the settlement fund (or $140,000.00) for attorneys' fees[4].  For the reasons set forth below, Counsel respectfully submits that the attorneys' fees are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded.

Courts have consistently recognized that counsel "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  While a court may calculate reasonable attorneys' fees by either "the percentage of recovery method" or the "lodestar method", "[t]he percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting, *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ("Prudential II")).  A lodestar cross-check of the calculation may then be done to confirm the reasonableness of the fees.  *See Rite Aid*, 396 F.3d at 300.

---

[4] Counsel is also seeking $2550.00 in reimbursement for expenses.  These expenses consist of the filing fee for the complaints in this court and state court, as well as expenses for the mediation.

"[A] thorough judicial review of fee applications is required in all class action settlements" to assure the district court that the Class Counsel has not "urge[d] a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." *Prudential II*, 148 F.3d at 333.  "[T]he amount of a fee award . . . is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous."  *See Rite Aid*, 396 F.3d at 299 (quotation omitted).  "What is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *Prudential II*, 148 F.3d at 342.

The factors considered in analyzing a fee award in a common fund case include:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Rite Aid*, 396 F.3d at 301 (quoting, *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).  This list is not exhaustive, and the Third Circuit has specifically highlighted "three other factors that may be relevant and important to consider:"

1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement . . . .

*In re AT&T Corp. Secs. Litig*., 455 F.3d 160, 165 (3d Cir. 2006) (citing, *Prudential II*, 148 F.3d at 338-340).  "A court is not required to apply the[se] *Gunter* and *Prudential II*

factors formulaically; in certain cases, some factors may outweigh others." *Sullivan v. DB Invs., Inc.*, No. 04-2819 (SRC), 2008 U.S. Dist. LEXIS 81146, at *84 (D.N.J. May 22, 2008), *aff'd by* 667 F.3d 273 (3d Cir. 2011).

      1.      **The *Gunter* and *Prudential II* Factors Establish That The Class Counsel's Fee Request Is Reasonable.**

          a.      **The Size Of The Fund Created And The Number Of Persons Benefited.**

The common fund in this case is $700,000.00. The net settlement fund is significant compared to the 59 Plaintiffs that it benefits. The ratio of the net settlement fund to the number of Plaintiffs is $11.864.41 per Plaintiff.[5] This is comparable to the ratio of net settlement fund to class members in other wage and hour class actions. *See, e.g., Chemi v. Champion Mortg.*, No. 2:05-1238(WHW), 2009 U.S. Dist. LEXIS 44860, at *13-14 (D.N.J. May 26, 2009) (wage and hour settlement where net settlement fund, after costs, was $1.155 million and there was 917 class members – ratio: $1,260 per class member); *Lenahan v. Sears, Roebuck & Co.*, No. No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006), *aff'd by*, 2008 U.S. App. LEXIS 3798 (3d Cir. Feb. 21, 2008) (wage and hour settlement where net settlement was $14.6 million, after attorneys' and settlement administrator costs, and there was 16,000 class members – ratio: $913 per class member). Moreover, the Settlement is all the more significant given the substantial risks in maintaining the class and establishing liability had litigation proceeded.

---

[5]    *See Moore*, 2011 U.S. Dist. LEXIS 6929, at *12 (the division of the settlement fund by the number of class members provides a basis for calculating the benefit to the class).

Finally, this is not a mega-fund settlement where the large size of the settlement would result in Counsel receiving a windfall.  *See In re Cendant Corp. Prides Litig*, 243 F.3d 722, 736 n.19 (3d Cir. 2001).

Thus, this *Gunter* factor supports Counsel's fee application.

### c.      Class Counsel Is Skilled In Wage And Hour Cases And Efficiently Resolved This Case.

"The skill and efficiency of the attorneys involved is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *60-61 (internal quotation omitted); *Chemi*, 2009 U.S. Dist. LEXIS 44860, at *31 (same).

Counsel used their experience to achieve a substantial cash settlement for the Plaintiffs. *See* DiChiara Decl. at ¶¶ 4-10.  Through skillful negotiation, Counsel avoided the need for dispositive motions, extensive class discovery and certification motions, and trial. The result reflects Class Counsel's skill and experience in wage-and-hour litigation. *See Serio*, 2009 U.S. Dist. LEXIS 27992, at *32 ("Class Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved."); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *57 (efficient favorable result for the class was evidence of class counsel's skill).

Accordingly, this *Gunter* factor weighs in favor of Class Counsel's fee request.

####    d.      The Complexity and Duration of the Litigation

"FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *Brumley v. Camin Cargo Control, Inc.*, Nos. 08-1798(JLL), 09-6128(JLL), 10-2461(JLL), 2012 U.S. Dist. LEXIS 40599, at \*33 (D.N.J. Mar. 26, 2012) (citing cases).  Accordingly, while Counsel worked hard to efficiently resolve the case, Counsel nevertheless was required to invest hundreds of hours in this case to bring it to resolution

####    e.      The Risk of Nonpayment

Class Counsel represented the Plaintiffs entirely on a contingent basis, with no up-front retainer fees or expenses.  Counsel could only recover fees and expenses if Plaintiffs prevailed. "Counsel's contingent fee risk is an important factor in determining the fee award." *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355, at \*66 (D.N.J. Oct. 13, 2010) (quotation omitted); *Serio*, 2009 U.S. Dist. LEXIS 27992, at \*33 (same).  "The risk of nonpayment here, as with most contingency work, was high" which "further substantiates the propriety of the attorneys' fee award." *Hall*, 2010 U.S. Dist. LEXIS 109355, at \*66-67.

To date, Counsel have expended hundreds of hours, yet have received no remuneration for their work. The risk of non-payment was great and weighs in favor of the requested fee. *See Lenahan*, 2006 U.S. Dist. LEXIS 60307, at \*62-63; *Brumley*, 2012 U.S. Dist. LEXIS 40599, at \*34-35.  Moreover, Counsel's agreement with Plaintiffs called for Counsel to receive 33.3% of any settlement.  Counsel has voluntarily lowered there fee percentage to 20% to allow the Plaintiffs to recover more from the total settlement fund.  *See* DiChiara Decl. at ¶ 15.

**d.   Counsel's Fees Are Less Than Comparable Awards In Similar Cases.**

Here, Counsel is seeking 20% of the settlement in fees. "Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases." *Brumley*, 2012 U.S. Dist. LEXIS 40599, at *36 (citing cases and awarding one-third of $3.9 million settlement for FLSA collective); *In re. Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."). *See, e.g.* *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52-54 (awarding fees of 32.6% of $3 million settlement for overtime class); *Adeva v. Intertek USA Inc., et al.*, No. 09-CV-01096-SRC-MAS, Dkt. No. 228 (D.N.J. Dec. 22, 2010) (awarding 34% of $10 million settlement fund for FLSA collective); *Bernhard v. TD Bank, N.A.,* 08-cv-04392-RBK-AMD, Dkt. No. 40 (D.N.J. Feb. 3, 2010) (awarding one-third of settlement for fees in overtime class action).[6]

**e.   The *Prudential II* Factors Support The Approval Of Class Counsel's Fees.**

The Prudential *II* factors also support Counsel's request for an award of one-third of the Settlement Class fund for attorneys' fees.

---

[6]   *See also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *15-17 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of common fund in wage and hour case and ruling that "for 33 1/3% of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (same).

First, the Settlement fund was attributable to the efforts of Counsel – and the Plaintiffs – as opposed to government agencies or other groups. No state agency or other group assisted in the prosecution of this action or otherwise assisted in obtaining the benefits recovered in the Settlement.  Accordingly, the first *Prudential II* factor supports the fee award.

The second *Prudential II* factor also supports the fee award because "[t]he attorneys' fees request of one-third of the settlement fund . . . comports with privately negotiated contingent fees negotiated on the open market."  *Brumley*, 2012 U.S. Dist. LEXIS 40599, at *37.  *See also Hall*, 2010 U.S. Dist. LEXIS 109355, at *71 ("The requested fee of 33 1/3 % is also consistent with a privately negotiated contingent fee in the marketplace."); *Campos v. Goode*, No. 10 Civ. 0224, 2011 U.S. Dist. LEXIS 22959, at *21 (S.D.N.Y. Mar. 4, 2011) (approving attorneys' fees of one-third of class fund in part because "reasonable, paying client[s] typically pay one-third of their recoveries under private retainer agreements.").  Here, prior to initiating litigation, the named Plaintiffs agreed to a fee structure of 33.3% of any recovery.  Counsel voluntarily lowered their fee to 20% to allow the Plaintiffs a greater recover.

The final *Prudential II* factor which considers the existence of "innovative" settlement terms does not apply here.  While the Settlement favorably settles the wage and hour claims of all Settlement Class Member in exchange for a substantial financial payment, none of the terms in the Settlement qualify as "innovative."

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant final approval of the Settlement, Incentive Awards, and Attorney Fees.

Dated: October 29, 2013                     Respectfully submitted,

                                            KRAKOWER DICHIARA LLC


                                            By: __/s/ Michael R. DiChiara_____
                                                Michael DiChiara

                                                One Depot Square
                                                77 Market Street, Suite 2
                                                Park Ridge, NJ 07656
                                                (201)-746-0303
                                                (866) 417-2333 (fax)